**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| LUCI BAGS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-cv-377 (ALM) |
| | § | |
| YOUNIQUE, LLC, | § | |
| | § | |
| | § | |
| Defendant. | § | |

---

**BENCH BRIEF IN SUPPORT OF**
**ORAL MOTION TO EXCLUDE EXPERT TESTIMONY FROM RHONDA HARPER**

Plaintiff Luci Bags LLC ("LLC") will call Rhonda Harper, MBA, to offer her opinion

about whether Luci's four stripes design at issue in this case ("Four Stripes Design) has acquired

secondary meaning based on a consumer survey she directed. Defendant Younique LLC

("Younique") moves to exclude her testimony because she cannot be qualified to offer expert

opinions about secondary meaning under Federal Rule of Evidence 702 ("FRE"). Ms. Harper's

expected testimony is too unreliable to be admitted for at least three reasons.

*First*, although she concedes that a survey universe must include potential customers of

Luci Bags, her universe is overbroad because the screening questions do not actually limit the

universe to those who would want to purchase a display bag like a Luci Bag. The survey is also

underbroad because she also excludes a significant portion of potential customers from

participating in the survey by limiting the survey to those recently involved in direct sales and

marketing. Ms. Harper's basis for defining the universe in this way is based on little more than

an e-mail "survey" performed by Luci's founder and CEO Rebecca Lucas after the litigation

began, and only in response to Younique's disclosure of its own secondary meaning survey. But

as a purported expert in consumer surveys, Ms. Harper should recognize that Ms. Lucas's survey

was not anywhere close to methodologically sound. Ms. Lucas's so-called survey results are also

inconsistent with Luci's own advertising showing that Luci intended to sell its bags to customers

other than direct sales and marketers. Utilizing the wrong universe of survey participants is a

fatal flaw that goes to the heart of the reliability of Ms. Harper's survey.

*Second,* Ms. Harper's opinions cannot aid the Court in determining whether Luci has

shown that the Four Stripes Design had acquired secondary meaning because her analysis rests

on a fundamentally flawed understanding of what secondary meaning is. A design acquires

secondary meaning when its primary function serves as a source indicator rather than part of the

product itself. Ms. Harper believes that the only question relevant to determine the existence or

absence of secondary meaning is whether customers associate a design with a single company.

That is plainly wrong as a matter of law. It also leads Ms. Harper to endorse obviously absurd

conclusions. Under her theory, customers who see a Luci Bag and mistake it for a Mary Kay bag

are proof that those customers believed the bag originated from Luci. That's obvious nonsense of

the type that the Court must reject in its gatekeeper role under FRE 702.

*Third*, her analysis of her own survey includes misleading opinions that are contrary to

the evidence. Even though she wrongly maintains that the only relevant question in a secondary

meaning survey is whether consumers associate a design with a single company, Ms. Harper

nonetheless includes additional analysis based on additional questions she asked survey

participants. Those extra responses, in fact, show how few individuals involved in direct sales

recognize a Luci Bag's design (9 out of 290 survey participants, or 3%). So Ms. Harper attempts

to manipulate that percentage by excluding any survey participant who did not initially say they

associated the bag with a single company. That exclusion cannot be squared with a survey

attempting to determine whether a design has acquired a secondary meaning as a source indicator. It is in reality nothing but alchemy to try to hide the true import of her survey. Such manipulation proves the unreliability of her opinion.

## FACTUAL BACKGROUND

Luci alleges its Four Stripe Design used in certain display bags with clear external pockets is protectable trade dress under the Lanham Act and Texas state law. Luci has claimed Younique infringed upon that trade dress when it gave away a display bag that allegedly included the Four Stripes Design as part of a broader promotion.

Younique moved for summary judgment based in part on survey results from its expert, Dr. Deborah Jay, showing that only 3% of survey participants associated a Luci Bag with a single, albeit anonymous source. Dkt. 30. In its opposition to that motion, Luci submitted an expert report from Rhonda Harper analyzing the results of her own secondary meaning survey. *See* Dkt 37-7 ("Harper Report"). Ms. Harper completed an online survey in which she showed survey participants slightly modified pictures of certain Luci display bags with the "Luci Bags" logo removed:



FRONT                    BACK

Harper Report ¶ 20. Ms. Harper included a variety of screening questions in an attempt to identify a universe of customers and potential customers of Luci's display bags. *See id.* ¶ 16. In addition to some general screening questions, the survey only allowed participants to complete the survey if they had "in the past three years, sold items through direct sales and marketing" and had "seen or used tote bags that are used to display items in see-through pockets for the primary purpose of promoting a business." *Id.* ¶ 18. Of the 13,220 individuals who responded to the survey, only 290 ultimately completed the survey. *See id.* ¶¶ 31-32.

Ms. Harper's survey showed that only 73 of the 290 (or about 25%) of survey completers associated the Luci Bag with a single company:

| Answer Choices | Response Percent | Response Count |
|----------------|-----------------|----------------|
| One company | 25.17% | 73 |
| More than one company | 13.45% | 39 |
| No company | 45.17% | 131 |
| Don't Know / Other | 16.21% | 47 |
| Total | | 290 |

Report ¶ 33.

Citing a 1979 case from the Second Circuit, Ms. Harper claimed the purpose of a secondary meaning survey is to "ascertain whether consumers associate a certain word, symbol, collocation of color, design, or good as emanating from a single source." Harper Report ¶ 9 (citing *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1059 (2d Cir. 1979)). Relying on out of circuit authority again, she also asserted that a "trademark survey need not ask whether the consumer can identify the actual source of a product by name." Harper Report ¶ 36 (citing

*Centaur Communications Ltd. v. A/S/M Communications Inc.*, 830 F.2d 1217, 1221 (2d Cir. 1987)). She later testified that, for determining the existence of secondary meaning, "the real threshold is whether or not [survey participants] identify [the stimulus] with one company." (Harper Dep. Tr. at 32:4-5).

Despite this belief, she nonetheless asked the 73 survey participants who responded that they associated the bag with a single company to identify that company. *See* Harper Report ¶ 36. Only 9 participants reported that they associated the bag with Luci Bags. *Id.* Other participants associated the bag with Thirty-One (17), Mary Kay (5), Vera Bradley (3), or "Misc. Other Brands" (17). *Id.* Another 22 participants did not know the company's name they associated the bag with. *Id.* When calculating percentages about this data, Ms. Harper used only the 73 participants who associated the bag with a single company. Based on this assumption, she represented that over 12% associated the bag with Luci, and another 30% associated the bag with an anonymous source. *See id.*

Because "[n]early twice as many Completers, 25.17% v. 13.45%, responded 'One company' rather than 'More than one company,'" and in light of high percentage of responses indicating that a significant number of responses indicating they never saw the bag or did not associate it with a single company, Ms. Harper contends that "Plaintiff's tote bag has obtained secondary meaning." *Id.* ¶ 41.

## ARGUMENT

Federal Rule of Evidence 702 asks the Court to serve as a gatekeeper to ensure expert opinion testimony is not only relevant but reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). This requires the Court to determine whether

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

As the proponent of Ms. Harper's testimony, Luci bears the burden to qualify her as an expert under this rule. *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400–01 (5th Cir. 2016). Ms. Harper's testimony is not the product of reliable principles and methods, and she failed to apply reliable principles and methods to the facts of this case.

I.   **Ms. Harper's Testimony is Not the Product of Reliable Principles and Methods Because Her Survey's Universe is Both Underinclusive and Overinclusive.**

Trademark cases frequently feature surveys as evidence of secondary meaning or actual confusion.  The goal of any consumer survey must be "to elicit honest and unprompted consumer reaction as to association between a given trade symbol and a single source of the product." *Sno-Wizard Mfg., Inc. v. Eisemann Prod. Co.*, 791 F.2d 423, 427 (5th Cir. 1986). One of the most important determinations is the "adequacy of the universe" *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 487 (5th Cir. 2004). It is a "crucial step" because "if the wrong persons are asked, the results are likely to be irrelevant." *McCarthy* § 32:159. The selection of the wrong universe can make a survey so unreliable as to require its exclusion from evidence. *Fetzer*, 381 F.3d at 488 ("serious flaws in a survey will make any reliance on that survey unreasonable"); *Cit. Fin. Grp., Inc. v. Cit. Nat. Bank of Evans City*, 383 F.3d 110, 121 (3d Cir. 2004) (affirming decision to exclude; survey's universe selection was not a "technical flaw" but a "fatal one.").

The proper universe of a secondary meaning survey is all past or potential purchasers of Luci Bags. *See, e.g.*, *Amid, Inc. v. Medic Alert Found. United States, Inc.*, 241 F. Supp. 3d 788, 816 (S.D. Tex. 2017). Ms. Harper purports to agree with this proposition. *See* Report ¶ 16.  But

her survey does not capture that universe of potential customers because her survey is both

overinclusive and underinclusive.

Ms. Harper's survey universe is overinclusive because her screening questions ask only if

survey participants had "seen or used a display tote"—not questions that would determine

whether they would be interested in purchasing a Luci Bag. *Id.* ¶ 18.  But as any shopper

recognizes, seeing an item does not necessarily mean that you will want to buy it. Ms. Harper's

screening question is inconsistent with her own stated goal to define the universe as potential

purchasers.

The universe is overinclusive because Ms. Harper limited her survey only to individuals

who sold items through direct sales and marketing for three years, despite Luci's own advertising

targeting women in general who want to display non-direct sales items such as personal photos.

Harper Report ¶ 18. This limitation is particularly unsupportable because Ms. Harper relies only

on Lucas's representations and a purported e-mail "survey" performed by Ms. Lucas. That

survey is manifestly unreliable as Younique previously argued in its motion in limine, making

Ms. Lucas's survey results inadmissible hearsay. *See* Dkt. 71 at 11-15.[1] Ms. Harper has not

demonstrated that survey experts would "reasonably rely" on such an obviously unsound and

inadmissible survey "in forming an opinion" about the proper universe for the survey. Fed. R.

Evid. 703. Indeed, survey experts, of all people, would not reasonably rely on a facially

---

[1] In short, Ms. Lucas has no qualifications to administer a reliable survey. Unsurprisingly, the survey therefore failed to confirm respondents were actually Luci customers, made no effort to remove friends, families, or Luci employees, and included leading questions and images. This led to results that included obvious duplicate entries. Moreover, insofar as Ms. Lucas was attempting to discover who were *potential* purchasers of Luci Bags, interviewing only *past* purchasers of Luci Bags is, at best, problematic. *See Honestech, Inc. v. SonicSols.*, 430 F. App'x 359, 361 (5th Cir. 2011) ("focusing too closely on [past purchasers] renders the survey unreliable"); *Sno–Wizard Mfg., Inc. v. Eisemann Prods. Co.*, 791 F.2d 423, 427 (5th Cir. 1986) (criticizing survey universe predominantly composed of plaintiff's past purchasers).

inadequate survey to draw a conclusion about the proper universe. This fundamentally

undermines the reliability of Ms. Harrper's survey.

Moreover, Ms. Harper's conclusions about the proper universe for her survey are

particularly erroneous because she ignored the most relevant evidence in determining the

universe of "potential customers"—Luci's own advertising. She admitted that she did not review

*any* of Luci's advertisements before determining a universe for her survey. Ex. __, Harper Dep.

Tr. 19:14-15 ("Q. Did you consider any Luci advertising in setting the survey universe? A.

No."). Yet that advertising shows that potential purchasers of Luci Bags are not limited to those

in direct sales and marketing. Ms. Lucas herself admitted that "a common thread in Luci's

advertising" was that "one way that people could use its tote bags [] was to display photos of

family." Ex. __ Ms. Lucas Dep. at 67:19–22. And the record is replete with Luci's

advertisements and social media posts highlighting the various uses for Luci Bags beyond

displaying products for sale. *See, e.g.*, Dkt. 41-01 at 16-27.

**II.**     **Ms. Harper's Testimony Has Not Reliably Applied the Results of the Survey to the Facts of the Case Because She Does Not Understand What "Secondary Meaning" Means.**

Ms. Harper's opinions about whether her survey shows secondary meaning must be

excluded because Ms. Harper lacks an understanding of what it means for a design to acquire

secondary meaning. A design acquires secondary meaning, or acquired distinctiveness, when in

the minds of the public "the primary significance of a mark is to identify the source of the

product rather than the product itself." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d

225, 237 (5th Cir. 2010). Ms. Harper asserts that the only purpose of a secondary meaning

survey is to measure is whether a witness associates the bag with a single company*, regardless of*

*which company that is.* Report ¶¶ 9, 36, Ex. __ (Harper Dep. Tr. at 32:4-5). That's simply not the

law. *See, e.g.*, *Testmasters Ed. Serv., Inc. v. Singh*, 799 F.3d 437, 466 (5th Cir. 2015) (survey

must identify plaintiff as the company).[2] Moreover, this test cannot possibly measure whether

potential customers view a design as a primary source indicator. A consumer who associates

Luci's design with another company obviously does not recognize the design as a source

indicator for Luci. *See McCarthy on Trademarks and Unfair Competition* § 32:191 (5th ed.

2017) ("*McCarthy*") ("the survey introduced by a litigant must prove that buyers associate the

designation with it, not with another company"); *Amid,* 241 F. Supp. 3d at 814-815 (respondents

who identified a company other than plaintiff were subtracted from tally of respondents who

associated the image with a single source); *I.P. Lunc Trading ApS v. Kohler Co.*, 118 F. Supp. 2d

92, 107 (D. Mass. 2000) (no secondary meaning if majority of consumers believed product came

from a single source and single source was not plaintiff). Yet Ms. Harper ultimately makes that

exact conclusion by counting survey respondents that associated the bag with another single

company, like Vera Bradley, in concluding the bag acquired secondary meaning. *Id.* ¶ 36. By

not analyzing her survey results with a proper understanding of secondary meaning, Ms. Harper

failed to apply the results of her survey to the facts of the case. This requires the exclusion of her

testimony. Fed. R. Evid. 702(d).

### III.  Ms. Harper's Testimony Will Include Misleading Opinions Contrary to Evidence.

Ms. Harper includes in her report analysis of the company each survey respondent

associated with the bag. She claims this is unnecessary, but she asked survey respondents to

identify the company they associated the bag with anyway. Harper Report ¶ 36. Indeed, she also

does not base her finding of secondary meaning on this analysis. *Id.* ¶ 41. Nonetheless, insofar as

she intends to offer her analysis of this data at trial, the Court should prohibit her from doing so.

---

[2] To be sure, if a company associates a design with an *anonymous* company, that may show secondary meaning. *Nat. Polymer Int'l Corp. v. S & M Nutec, L.L.C.*, No. CIV.A.3:03CV0461-P, 2004 WL 912568, at *6 (N.D. Tex. Apr. 27, 2004).  But an anonymous company is not the same as "any" company.

When calculating the percentage of survey participants who recognized a Luci Bag (9 out of 290), Ms. Harper excluded any survey participant who either associated the bag with multiple companies or did not recognize the bag at all. *See id.* ¶ 36. This way she was able to claim that "12%" associated the bag with Luci. *Id.* Ms. Harper has never identified any authority to support the idea that survey participants who associated the bag with more than one company or who did not recognize the bag at all should be excluded from the results of a secondary meaning survey. In fact, that theory is contrary to her belief that the purpose of a secondary meaning survey is to determine whether consumers associate the bag with a single company. And it is contrary to the actual secondary meaning test, which asks whether consumers associate the bag with a single company, including an anonymous company. *Nat. Polymer*, 2004 WL 912568, at *6. In short, Ms. Harper did nothing but fudge a denominator to obfuscate the real results of her survey. Such data manipulation further undercuts her reliability, providing yet another reason to exclude her testimony at trial.

## CONCLUSION

For the foregoing reasons, the Court should exclude Ms. Harper's testimony from trial.

Dated: January 12, 2018

Respectfully submitted,
MORGAN, LEWIS & BOCKIUS LLP

/s/ Sharon R. Smith
Winstol D. Carter, Jr. (State Bar # 03932950)
winstol.carter@morganlewis.com
Elizabeth M. Chiaviello (State Bar # 24088913)
elizabeth.chiaviello@morganlewis.com
1000 Louisiana, Suite 4000
Houston, Texas 77002
(713) 890-5000 Telephone
(713) 890-5001 Facsimile

Sharon R. Smith (*pro hac vice*, CA SBN 221428)
sharon.smith@morganlewis.com
One Market, Spear Street Tower

San Francisco, CA 94105
(415) 442-1000 Telephone
(415) 442-1001 Facsimile

Attorneys for Defendant Younique, LLC

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served in person by hand on counsel of record for Plaintiff Luci Bags LLC during trial on January 9, 2018, and has been served on Plaintiff through its counsel of record via the Court's CM/ECF system on January 12, 2018.

*/s/ Sharon R. Smith*
Sharon R. Smith